IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL ROTHSTEIN and ROMAINE
ROTHSTEIN,

3:14-CV-1102-PK

FINDINGS AND
RECOMMENDATION

Plaintiffs,

v.

BAYVIEW LOAN SERVICING, LLC,

Defendant.

PAPAK, Magistrate Judge:

Plaintiffs Michael Rothstein ("Michael") and Romaine Rothstein ("Romaine" and, collectively with Michael, the "Rothsteins") brought this action against defendant Bayview Loan Servicing, LLC ("Bayview"), in the Multnomah County Circuit Court on June 5, 2014. Bayview removed the action to this court effective July 10, 2014. The Rothsteins amended their

Page 1 - FINDINGS AND RECOMMENDATION

complaint in this court effective October 24, 2014. By and through their amended complaint, the Rothsteins allege Baview's liability for violation of Oregon's Unlawful Trade Practices Act (Or. Rev. Stat. 646.605 *et seq.*), violation of the federal Fair Debt Collections Practices Act (15 U.S.C. § 1692 *et seq.*), breach of contract in violation of Oregon common law, and negligent misrepresentation in violation of Oregon common law. This court has federal-question jurisdiction over the Rothsteins' Fair Debt Collections Practices Act claim pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental jurisdiction over plaintiffs' three state-law claims pursuant to 28 U.S.C. § 1367.

Now before the court is Bayview's motion (#16) to dismiss the Rothsteins' breach of contract and negligent misrepresentation claims for failure to state a claim upon which relief can be granted. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, Bayview's motion should be granted, and the Rothsteins' common-law claims of negligent misrepresentation and breach of contract should be dismissed with prejudice.

## LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id., quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R.

Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## FACTUAL BACKGROUND

### I. The Parties

Plaintiffs Michael and Romaine are residents of Washington County, Oregon. Defendant Bayview is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Coral Gables, Florida.

## II. The Rothsteins' Allegations Regarding the Parties' Dispute[1]

In August 2006 the Rothsteins purchased a residential property located at 1352 Evah Lane in West Linn, Oregon (the "property"). In connection with their purchase of the property, the Rothsteins entered into two mortgage loans with Bank of America, each secured by a Trust Deed for the property.

In or around August 2009, the Rothsteins stopped making monthly payments on both Bank of America loans. In early 2011, Bank of America advised the Rothsteins that the property would be sold at a public foreclosure sale. The Rothsteins filed for Chapter 7 bankruptcy in June 2011, and in December 2011, the Bankruptcy Court granted a discharge absolving the Rothsteins of personal liability on each of the two defaulted loans.

In 2012, Bank of America transferred the "servicing" of the senior loan to Bayview and the servicing of the junior loan to third party Real Time Resolutions. At some time in 2012, Bayview initiated discussions with the Rothsteins regarding the possibility of avoiding foreclosure proceedings through transfer of the Rothsteins' interest in the property to Bayview (a type of transaction referred to by the parties as a "deed in lieu of foreclosure" or more briefly as a "deed in lieu").

From late 2012 through late 2013, Michael negotiated with Bayview representatives regarding the terms of the proposed transfer. In late 2013, a Bayview representative orally advised Michael that "the deed in lieu was approved," and that Bayview would pay the Rothsteins $8,500 in exchange for their execution of the transfer documents. Subsequently, a

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the allegations of the Rothsteins' complaint and of the matters properly subject to judicial notice in the light most favorable to the Rothsteins.

Page 4 - FINDINGS AND RECOMMENDATION

different Bayview representative advised Michael that Bayview would pay only $2,000 in exchange for the transfer. The Rothsteins then requested that the proposed arrangement be memorialized in a writing, but Bayview sent them only "mortgage assistance request forms" by and through which Bayview requested information about the Rothsteins' financial status. The Rothsteins did not fill out or return the forms.

From July to December 2013, Bayview sent the Rothsteins a total of eight letters indicating that Bayview was negotiating the terms of a deed-in-lieu transfer with Real Time Resolutions (the junior loan servicer). Notwithstanding that repeated representation, Bayview did not, in fact, at any time contact Real Time Resolutions regarding the proposed transfer of interest. Moreover, Bayview has continued to send the Rothsteins monthly billing statements in connection with the senior mortgage loan on the property, notwithstanding the bankruptcy discharge of December 2011. The parties never executed documents effecting a deed-in-lieu transfer of the Rothsteins' interest in the property to Bayview.

## ANALYSIS

By and through its motion, Bayview seeks dismissal only of the Rothsteins' common-law claims of breach of contract and negligent misrepresentation. I discuss the parties' arguments in connection with each of those claims in turn, below.

### I. Breach of Contract

The purported contract underlying the Rothsteins' breach of contract claim is the alleged deed in lieu of foreclosure agreement pursuant to which the Rothsteins hoped to transfer their interest in the property to Bayview in exchange for Bayview's promises to pay the Rothsteins either $8,500 or $2,000 and to forbear on foreclosure of the senior Bank of America loan.

Page 5 - FINDINGS AND RECOMMENDATION

Bayview takes the position that it is entitled to dismissal of the breach of contract claim because the purported agreement, even if entered into by the parties, is as a matter of law an unenforceable oral agreement under Oregon's statute of frauds. It is undisputed that the purported agreement was never memorialized in a writing subscribed by the parties.

Under Oregon, law, a plaintiff in a breach of contract action "has the burden to establish the existence of a valid contract and the breach thereof." *Pendleton Grain Growers v. Pedro*, 271 Or. 24, 28 (1975). Pursuant to Oregon's statute of frauds, certain contracts (including contracts that cannot be performed within one year of their date of execution, contracts for the transfer of interests in real property, and certain promises to forbear in connection with the repayment of debt) must be in a subscribed writing in order to be valid and enforceable:

> (1) In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:
>
> \* \* \*
>
> (e) An agreement . . . for the sale of real property, or of any interest therein.
>
> \* \* \*
>
> (h) An agreement, promise or commitment . . . to forbear with respect to the repayment of any debt payable in money, to modify or amend the terms under which the person has lent money or otherwise extended credit, to release any guarantor or cosigner or to make any other financial accommodation pertaining to an existing debt or other extension of credit. This paragraph does not apply:
>
>> (A) If no party to the agreement, promise or commitment is a financial institution as defined in ORS 706.008, a consumer

Page 6 - FINDINGS AND RECOMMENDATION

>   > finance company licensed under ORS chapter 725 or a mortgage banker as defined in ORS 86A.100; or
>
> (B) To a loan of money or extension of credit to a natural person which is primarily for personal, family or household purposes and not for business or agricultural purposes or which is secured solely by residential property consisting of one to four dwelling units, one of which is the primary residence of the debtor.

Or. Rev. Stat. 41.580(1).

The purported deed-in-lieu agreement, if entered into by the parties as suggested by the Rothsteins' allegations, is within the scope of Oregon's statute of frauds. The purported agreement is most clearly within the scope of Section 41.580(1)(e), in that it allegedly would provide for the Rothsteins to transfer their interest in the property to Bayview in exchange for both monetary consideration and Bayview's promise to forbear to foreclose on the senior loan. *See* Or. Rev. Stat. 41.580(1)(e); *see also, e.g., Oltmanns v. Lewis*, 135 Or. App. 35, 38 (1995) ("In general, an oral agreement to transfer real property is unenforceable, because it violates the Statute of Frauds").

Because the purported agreement is clearly within the scope of Section 41.580(1)(e), the court need not consider whether it falls within the scope of any other provision of Section 41.580(1). I nevertheless note that the purported agreement likely falls also within the scope of Section 41.580(1)(h), in that Bayview is alleged to have promised to forbear with respect to repayment of the senior Bank of America loan.[2] *See* Or. Rev. Stat. 41.580(1)(h).

---

[2] The Rothsteins argue that Section 41.580(1)(h) is inapplicable here in consequence of the December 2011 bankruptcy discharge which absolved them of personal liability in connection with either of the two Bank of America loans. However, the Rothsteins' argument is not well taken because it is clear as a matter of law that a discharge under Chapter 7 of the Bankruptcy Code extinguishes only the personal liability of the debtor, and not the underlying

Page 7 - FINDINGS AND RECOMMENDATION

The Rothsteins argue that, even on the assumption that the parties' purported agreement was within the scope of the Statute of Frauds, they partially performed their obligations thereunder such that it would be inequitable for this court not to disregard the Statute for purposes of determining the agreement's enforceability. I agree with the Rothsteins that, under appropriate circumstances, a party's partial performance of an oral contract may render the contract enforceable notwithstanding the Statute of Frauds:

> Under the doctrine of partial performance, if the party asserting the doctrine can show, by a preponderance of the evidence, the existence of an agreement that is

---

debt; where the debt was secured by real property the creditor retains the right to pursue recovery of the debt through foreclosure of the mortgage. *See Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991); *see also, e.g., In re Culpepper*, 481 B.R. 650, 657 (Bankr. D. Or. 2012) (same). Bayview's alleged promise to forbear in connection with that retained right to foreclose on the senior mortgage loan therefore necessarily falls within the scope of the provision.

The Rothsteins further argue, in the alternative, that if the purported agreement falls within the scope of Section 41.580(1)(h) the provision is nevertheless inapplicable because it also falls within the scope of the exception codified at Section 41.580(1)(h)(B). The gravamen of this argument is that because the Rothstein's mortgage loan from Bank of America was a personal loan secured by real property that was the primary dwelling place of the borrowers, and thus would have been within the scope of the exception to Section 41.580(1)(h), Bayview's purported agreement to forbear from foreclosing in connection with that loan must likewise fall within the scope of the exception. The Rothsteins' reasoning in connection with this argument is fatally flawed, however, in that the Rothsteins' allegations cannot be construed as suggesting that the purported deed-in-lieu agreement is (or could be) identical with the senior Bank of America loan. To the contrary, it is clear from the Rothsteins' allegations that the purported agreement at issue here is an agreement to transfer an interest in real property in exchange for both monetary consideration and a promise to forbear from foreclosure on an existing debt, and is therefore outside the scope of the exception.

The parties do not discuss the exception to Section 41.580(1)(h) codified at Section 41.580(1)(h)(A). However, it appears clear from the Rothsteins' allegations that Bayview is a consumer finance company subject to the licensing provisions of Or. Rev. Stat. Chapter 725, and this court may properly take judicial notice that the Oregon Secretary of State, Department of Consumer & Business Services, Division of Finance & Corporate Securities lists Bayview as having held Mortgage Lender license number ML-4883 at all times material to this litigation. *See* Fed. R. Evid. 201; *see also* nmlsconsumeraccess.org/EntityDetails.aspx/COMPANY/2469 (last retrieved Jan. 7, 2015). The Section 41.580(1)(h)(A) exception is therefore likewise inapplicable here.

Page 8 - FINDINGS AND RECOMMENDATION

> clear and unambiguous in its terms, that the partial performance unequivocally and exclusively refers to the agreement, and that there are equitable grounds for enforcing the agreement, then a court may enforce an oral agreement concerning the sale or transfer of an interest in land.

*Burgdorf v. Weston*, 259 Or. App. 755, 758 (2013), *citing Mukai Living Trust v. Lopez*, 199 Or. App. 341, 345 (2005). However, those circumstances are clearly not present here.

The doctrine of part performance

> "'is invoked in those cases where a contract is entered into in good faith, and the plaintiff, relying upon the contract, and in pursuance of it, takes possession of property with the consent of the grantor, and makes expenditures on account thereof, or improves the same, or changes his relation with the grantor, so that a refusal to carry out the contract would result in manifest fraud, injustice, or oppression.'" *Hearn v. May et al*, 207 Ore. 514, 519, 298 P.2d 177 (1956) (*quoting Johnson v. Upper*, 38 Wash. 693, 80 P. 801 (1905)).

*Oltmanns v. Lewis*, 135 Or. App. 35, 38-39 (1995). In *McInnis v. Lind*, 198 Or. App. 139 (2005), for example, the plaintiff argued that purported partial performance of an alleged oral agreement to modify a contract for a transfer of interest in real property provided equitable grounds for disregard of the Statute of Frauds where the plaintiff tendered a $5,000 down payment and three monthly mortgage payments to the defendant, the defendant dismissed a pending ejectment action against the defendant, and the parties jointly hired an appraiser to determine the fair market value of the property. *See McInnis*, 198 Or. App. at 151-152. Noting that the defendant refused tender of the down payment and that the monthly payments were less than what the plaintiff owed the defendant by way of monthly rent even in the absence of an agreement for purchase of the real property, such that the defendant was not unjustly enriched by the tendered payments, noting that the dismissal of the ejectment action was not detrimental to but rather beneficial to the plaintiff, and noting that the parties' jointly cancelled the appraisal before it occurred, such that the plaintiff did not incur an appraisal fee, the court summarily rejected the

Page 9 - FINDINGS AND RECOMMENDATION

proposition that the plaintiff's purported partial performance could have been "sufficient to remove the alleged oral agreement from the statute of frauds." *Id.* at 152.

Here, nothing in the course of the parties' dealings suggests that enforcement of the Statute of Frauds could result in any manifest fraud, injustice, or oppression. The Rothsteins' purported partial performance consists solely of time and effort spent negotiating the purported agreement, expressions of willingness to enter into the proposed arrangement, receipt of letters regarding Bayview's supposed efforts to negotiate the arrangement with the servicer of the junior loan, and receipt of application materials. Still more clearly than was the case in *McInnis*, none of the plaintiffs' purported partial performance was undertaken in reliance on the parties' purported agreement or to the Rothsteins' cognizable detriment. In consequence, the Rothsteins cannot meet the standard for disregard of the Statute of Frauds set forth in *Oltmanns* and *McInnis*.

Finally, in the alternative, the Rothsteins assert that in advance of discovery "it would be premature to deny plaintiffs the opportunity to determine if defendant has documents in its possession which support plaintiffs' [breach of contract] claim[]." At oral argument in connection with Bayview's motion, counsel for the Rothsteins did not, when invited to do so, articulate with specificity how discovery might establish that the parties' purported agreement could be enforceable notwithstanding the Statute of Frauds; in particular counsel did not indicate that any discovery could establish that the parties' purported agreement was ever memorialized in a writing subscribed by Bayview. I therefore do not find that the Rothsteins' breach of contract claim can properly survive Bayview's motion to dismiss on the strength of the Rothsteins' proffered assertion of prematurity.

Page 10 - FINDINGS AND RECOMMENDATION

For the foregoing reasons, Bayview's motion should be granted as to the Rothsteins' breach of contract claim.

## II.     Negligent Misrepresentation

By and through their amended complaint, the Rothsteins expressly allege their claim of negligent misrepresentation in the alternative to their other claims; the gravamen of the claim is that "Bayview's breach of its agreement to conclude the deed in lieu agreement was either intentional, or negligent," and if not intentional, then negligent with respect to Bayview's purported "duty . . . to provide plaintiffs with the contractual documents it both promised, and represented to plaintiffs." Under Oregon law, a party may be found liable for economic loss sustained by another who reasonably relies on the party's negligent misrepresentation. *See Conway v. Pacific Univ.*, 324 Or. 231, 236 (1996). However, such liability must be predicated on a duty owed by the negligent actor to the injured party *beyond* the common law duty to exercise reasonable care to prevent foreseeable harm. *See id.* Moreover, in order to receive economic damages for another party's negligent misrepresentation, a "special relationship" must exist between the parties. *See Onita Pac. Corp. v. Trs. of Bronson*, 315 Or. 149, 159 (1992). Such a "special relationship" exists where:

> (1) One party relinquishes control over matters, usually financial, and entrusts them to the other party. . . ; (2) The party with control is authorized to exercise independent judgment; (3) in order to further the other party's interests; and (4) The relationship either is, or resembles, other relationships in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship.

*Bell v. Public Emples. Ret. Bd.*, 239 Or. App. 239, 249-250 (2010) (internal quotation marks omitted), *quoting Onita*, 315 Or. at 160. In analyzing whether such a relationship exists:

> The focus is not on the subject matter of the relationship, such as one party's

Page 11 - FINDINGS AND RECOMMENDATION

> financial future; nor is it on whether one party, in fact, relinquished control to the other. The focus instead is on whether the **nature of the parties' relationship itself** allowed one party to exercise control in the first party's best interests. In other words, the law does not imply a tort duty simply because one party to a business relationship begins to dominate and to control the other party's financial future. Rather, the law implies a tort duty only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf.

*Bennett v. Farmers Ins. Co.*, 332 Or. 138, 161-162 (2001) (emphasis original).

In response to Bayview's motion to dismiss, the Rothsteins expressly conceded that their negligent misrepresentation claim would not lie on the facts as alleged in their amended complaint, and conceded that the claim was therefore subject to dismissal. On that basis, the Rothsteins informally "move[d]" the court for dismissal of the claim without prejudice.

Bayview's arguments in favor of dismissal of the negligent misrepresentation claim with prejudice are well taken. First, the Rothsteins' allegations, interpreted in the light most favorable to the Rothsteins, tend to establish both that Bayview and the Rothsteins were arms'-length negotiators with regard to the purported deed-in-lieu agreement and that Bayview's relationship to the Rothsteins was that of "loan servicer," a role lacking authority to exercise control over a borrower's best interests. As such, a finder of fact could not reasonably conclude on the basis of the Rothsteins' allegations that the parties were in the kind of special relationship requisite to a negligent misrepresentation claim.

Second, the only misrepresentation by Bayview that can reasonably be inferred from the Rothsteins' allegations – that Bayview would provide and (presumably) execute documents effecting the parties' purported agreement – was at most a statement of intent with regard to a future contingency, and not a misrepresentation of any then-present state of affairs. Although it does not appear that the Oregon courts have weighed in on the specific question whether a

Page 12 - FINDINGS AND RECOMMENDATION

negligent misrepresentation claim could lie on the basis of a false representation of intent regarding a future contingency, I agree with Baview that embrace of that proposition would imply that every breach of contract claim could sound in tort as either an intentional or negligent misrepresentation, a position the Oregon courts have never adopted.

Third, I agree with Bayview that, construing the Rothsteins' allegations in the light most favorable to them, their claimed damages (impaired "credit scores" and resulting "increased . . . interest costs" in connection with the Rothsteins' recent purchase of a new home) could not have been caused by reliance on Bayview's alleged misprepresentation (especially in light of the fact that Bayview has not actually foreclosed on the senior mortgage loan notwithstanding its position that it may properly do so), but rather were the direct consequence of the Rothsteins' undisputed default on their mortgage payments. In consequence, the Rothsteins cannot establish the damages element of their negligent misrepresentation claim on the basis of the facts alleged in their amended complaint.

At oral argument in connection with Bayview's motion, I asked counsel for the Rothsteins if any set of facts could be established through discovery in support of their negligent misrepresentation claim, such that dismissal of the claim without prejudice could be appropriate. In response, counsel stated that his clients had no objection to dismissal of the claim with prejudice.

Because Bayview's arguments in favor of dismissal of the negligent misrepresentation claim are well taken, and because the Rothsteins have stipulated that dismissal of the claim with prejudice is appropriate, Bayview's motion should be granted as to the Rothsteins' negligent misrepresentation claim, and the Rothsteins' informal motion for dismissal of that claim without

Page 13 - FINDINGS AND RECOMMENDATION

prejudice should be disregarded.

## CONCLUSION

For the reasons set forth above, Bayview's motion (#16) to dismiss should be granted as to the Rothsteins' common-law claims of breach of contract and of negligent misrepresentation.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 9th day of January, 2015.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge